Thomas G. Jarrard
Law Office of Thomas G. Jarrard, PLLC
1020 North Washington Street
Spokane, WA 99201
Email: tjarrard@att.net
Tel: (425) 239-7290

Jonathan Perrone*
Timothy Turner*
Whitcomb, Selinsky, P.C.
2000 South Colorado Boulevard
Tower 1, Suite #9500
Denver, CO 80222
Email: jon@wsmlawpc.com | tim@wsmlawpc.com
Tel: (303) 534-1958

*Counsel for the Plaintiff*

**Pro hac vice* application to be submitted*

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LAUNCE TURNER, <br><br> Plaintiff, <br><br> vs. <br><br> EMW, INC., <br><br> Defendant | Case No.: 20-cv-1756 <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff Launce Turner ("Mr. Turner" or "Plaintiff"), by and through counsel, brings this action against Defendant EMW, Inc. ("Defendant" or "EMW") and hereby states and alleges as follows:

## **INTRODUCTION**

1. On July 23, 2019, EMW wrongfully and willfully terminated Mr. Turner from his position because of his age.

COMPLAINT AND JURY DEMAND - 1

2. Mr. Turner worked for EMW for more than a year when Defendant fired him for the pretextual reason that he was allegedly involved in a customer complaint.

3. During Mr. Turner's time with EMW, he received solid evaluations from superiors and praise from customers.

4. As a result of Defendant's illegal conduct, Mr. Turner has suffered loss of wages and benefits, humiliation, severe emotional distress, loss of enjoyment of life, and other significant injuries, damages, and losses.

**JURISDICTION AND VENUE**

5. This Court has federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. The employment practices alleged herein to be unlawful were committed by a Virginia corporation against a citizen of the State of Washington, while he was working at a military base located in Afghanistan.

8. Mr. Turner was a citizen of the State of Washington before, during, and after his employment with EMW.

9. The action is authorized and instituted pursuant to the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, *et seq*.

**ADMINISTRATIVE PREREQUISITES**

10. Mr. Turner timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission and received his Notice of Right to Sue on September 1, 2020. Mr. Turner has met and exhausted all administrative prerequisites. This case is timely filed.

/////

COMPLAINT AND JURY DEMAND - 2

## PARTIES

11. Mr. Turner is a legal resident of the United States and was, at all relevant times, a citizen of the State of Washington and domiciled at a military base located in Afghanistan.

12. Mr. Turner was, until July 23, 2019, an employee of EMW.

13. Mr. Turner was born on May 27, 1956.

14. Upon information and belief, Defendant is a Virginia corporation with its principal place of business at 13873 Park Center Road, Ste #216, Herndon, VA, 20171

15. Upon information and belief, at all relevant times, Defendant has continuously been an employer within the meaning of the ADEA.

## FACTUAL ALLEGATIONS

16. In February 2018, EMW hired Mr. Turner to work as an Intelligence, Surveillance, and Reconnaissance (ISR) Field Service Representative (FSR) under a contract supporting the North Atlantic Treaty Organization (NATO) forces located at the Hamid Karzai International Airport (HKAI), a military base in Kabul, Afghanistan.

17. In September 2018, EMW transferred Mr. Turner to another military base in Kabul to work as an Electronic Countermeasures Counter Remote-Controlled Improvised Explosive Device (ECM C-RCIED) Technician under the same NATO support contract.

18. The in-country manager for the ECM C-RCIED program (the "Jammer Program") was Don Peloquin.

19. Mr. Peloquin and Mr. Turner worked together before on other defense programs and contracts, and the two regarded each other as friends.

20. Shortly after Mr. Turner's transfer to the Jammer Program, Mr. Peloquin brought on another EMW employee named Regina Harsh, who previously worked on a similar project at another military base located in Kandahar, Afghanistan.

COMPLAINT AND JURY DEMAND - 3

21.     Ms. Harsh and Mr. Turner performed similar roles under Mr. Peloquin's supervision and management, including maintaining, repairing, and replacing electronic-countermeasures equipment on NATO vehicles (typically, modified versions of the Toyota Landcruiser) and at entry control points (ECP) on the base perimeter.

22.     Ms. Harsh and Mr. Turner frequently worked together in the NATO maintenance motor-pool and other locations at Headquarters Resolute Support (HQRS) in Kabul.

23.     Ms. Harsh routinely made comments to Mr. Turner, such as "You're too old to be working out here [in Afghanistan]."

24.     Ms. Harsh would comment on Mr. Turner's physical condition and tell him to "hurry up" in the presence of Company customers – i.e., NATO soldiers and civilians.

25.     Upon information and belief, Ms. Harsh made similar statements respecting Mr. Turner's age to Mr. Turner's direct supervisor, Mr. Peloquin.

26.     Upon information and belief, Ms. Harsh also told Mr. Peloquin that Mr. Turner was "gunning for your [Mr. Peloquin's] job."

27.     Upon information and belief, Ms. Harsh's comments had substantial and demonstrable influence on Mr. Peloquin.

28.     For example, at Ms. Harsh's request, Mr. Peloquin urged Mr. Turner to transfer to another base in Afghanistan.

29.     Further, Mr. Peloquin often referred to Mr. Turner as "old man."

30.     Upon information and belief, Ms. Harsh and Mr. Peloquin engaged in a relationship that enabled Ms. Harsh to unduly influence Mr. Peloquin's decision-making.

31.     In April 2019, Mr. Turner and Ms. Harsh repaired jamming equipment on vehicles assigned to Lieutenant General James Rainey's ("General Rainey") personnel security detachment.

COMPLAINT AND JURY DEMAND - 4

32. General Rainey was then commander of the Combined Security Transition Command-Afghanistan (CSTC-A), located in Kabul.

33. Mr. Turner and Ms. Harsh removed and replaced jamming-equipment batteries.

34. Upon information and belief, those vehicles later suffered from an equipment failure caused by a defective or damaged direct-current to direct-current (DC-DC) converter.

35. Mr. Turner did not cause the DC-DC converter problem.

36. The DC-DC converter issue was unforeseeable to both Mr. Turner and Ms. Harsh at the time.

37. Months later, on July 23, 2019, EMW terminated Mr. Turner's employment via conference call.

38. The termination was effective July 27, 2019, the date Mr. Turner was sent home from Afghanistan.

39. Upon information and belief, the ostensible reason for Mr. Turner's termination was a "loss of confidence" in Mr. Turner's work by General Rainey resulting from the DC-DC converter failure that occurred over three months prior.

40. General Rainey's office provided no correspondence to Mr. Turner regarding the issue.

41. General Rainey had no interaction with Mr. Turner at any time.

42. Upon information and belief, the true reason for Mr. Turner's termination was Ms. Harsh's dislike for Mr. Turner due to his age and her persistent and impactful complaints with respect to his age (e.g., "You're too old to be working out here").

## CLAIM FOR RELIEF

**(Age Discrimination in Violation of ADEA, as amended, 29 U.S.C. §§ 621, *et seq.*)**

43. Plaintiff reasserts and re-alleges the allegations set forth above.

COMPLAINT AND JURY DEMAND - 5

44. At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the ADEA, 29 U.S.C. §§ 621, *et seq.*

45. EMW treated Plaintiff less favorably than his similarly situated younger counterparts in the terms and conditions of their employment, as Mr. Turner was terminated while a younger employee in Mr. Turner's position, who was equally involved in the alleged customer complaint, was not.

46. At all relevant times, Plaintiff performed the functions of his job competently and was qualified for his position with EMW.

47. Defendant terminated Plaintiff's employment because of his age. Age was the motivating factor in Defendant's decision to terminate Plaintiff.

48. Defendant discriminated against Plaintiff on the basis of age and caused him severe injuries, damages, and losses.

49. Defendant's discriminatory conduct was willful and in knowing or reckless disregard of the requirements of the ADEA.

50. As a consequence of Defendant's violation of the ADEA, Plaintiff has sustained significant economic and consequential damages.

## **CONCLUSION**

WHEREFORE, Mr. Turner respectfully requests that this Court enter judgment in his favor against Defendant, and award Mr. Turner all relief as allowed by law, including, but not limited to, the following:

    a. Declaratory relief and injunctive relief, as appropriate;

    b. Actual economic damages as established at trial;

COMPLAINT AND JURY DEMAND - 6

c. Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d. Liquidated damages for all claims as allowed by law;

e. Pre- and post-judgment interest at the highest lawful rate;

f. Attorneys' fees and costs; and

g. Such other and further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED: November 30, 2020.

<u>/s/ Thomas G. Jarrard</u>
Thomas G. Jarrard
Law Office of Thomas G. Jarrard, PLLC
1020 North Washington Street
Spokane, WA 99201
Tel:  425-239-7290
Email:  tjarrard@att.net

WHITCOMB, SELINSKY, P.C.

Jonathan D. Perrone, Esq.*
Timothy J. Turner, Esq.*
2000 South Colorado Boulevard
Tower 1, Suite #9500
Denver, CO 80222
Tel:  303-534-1958
Email:  jon@wsmlawpc.com
Email:  tim@wsmlawpc.com

*Counsel for the Plaintiff*

**Pro hac vice* application to be submitted.

COMPLAINT AND JURY DEMAND - 7